UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES PAGAN,

                            Plaintiff,

      v.                                              5:11-cv-825

MICHAEL J. ASTRUE, COMMISSIONER OF
SOCIAL SECURITY,

                            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Plaintiff James Pagan brought this action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), appealing a final decision of the Social Security Administration denying his claim for Social Security benefits.

**I.    FACTS**

The following facts are taken from Plaintiff's brief, to which Defendant consents, with the exception of any inferences, arguments, or conclusions. See Def. Mem. of Law at 1.

On the alleged onset date of March 18, 2008, plaintiff was 23 years old. T 128, 135. Plaintiff reported completing the 9th grade in 1999, and received automotive job training completed in 2001. T 174. He reported past work as a mechanic. T 177. Plaintiff's date last insured is December 31, 2013. T 165.

On March 21, 2008, Plaintiff treated with Elwira Kulawik, D.C., for an injury "sustained during the course of employment two months ago." T 243. Plaintiff reported

severe low back pain, numbness, and weakness of his extremities.  T 243.  Physical examination revealed positive cervical compression, positive Kemp's test, positive straight leg raise, and "moderate spasms over cervical and thoracic L5 junction."  T 243.  Plaintiff had dull sensation over bilateral wrists to finger tips and left/right L5 dermatone.  T 243.  Plaintiff was diagnosed as suffering from cervical sprain/strain.  T 243.

On June 5, 2008, Plaintiff treated with Rosa Cannata, RPA-C, and Carri A. Jones, M.D.  T 246.  Plaintiff reported numbness and tingling to both of his hands, pain in the neck and across the lower back.  T 245.  Physical examination revealed "tenderness to palpation at the C6, C7 paravertebral level bilaterally" and "tenderness to the paraspinal level just to the left side of the C6-7 level."  T 246.  Plaintiff had lumbar forward flexion range-of-motion of 40 degrees and extension to 20 degrees with discomfort.  T 246.  X-rays obtained on June 7, 2008 showed minimal degenerative disease, and "some changes within the L5 vertebral body with a question of a fracture at this level."  T 246.  Plaintiff was diagnosed as suffering from neck pain and questionable L5 vertebral fracture.  T 246.  Plaintiff was prescribed Ultracet, Skelaxin, and Mobic.  T 246.  Plaintiff had a temporary total disability pending further evaluation.  T 246.

On July 1, 2008, Vincent V. Sportelli, D.C., performed a chiropractic consultation of Plaintiff.  T 270.  Plaintiff reported low back, mid back, and shoulder pain.  T 270.  Plaintiff stated that he "experiences numbness and tingling in both legs and hands."  T 271.  Plaintiff had a positive Kemp's test on the right, tenderness to palpation on the right from C6-T4, T7-T9 and bilateral L3-L5.  T 272.  Plaintiff had positive Milgram's test, positive Yeoman's test bilaterally, and positive right Deerfield sign.  T 272.  "Kinesiological muscle testing revealed weak upper trapezius muscles bilaterally, weak middle trapezius muscles bilaterally,

weak quadratus lumborum muscle on the right as compared to the left, and weak right hip flexors and extensors as compared to the left." T 272. Chiropractor Sportelli diagnosed Plaintiff as suffering from lumbar strain and underlying grade one spondylothesis with spondylyiosis L5-S1. T 272. Plaintiff was restricted to "no bending/twisting at waist, no lifting on any repetitive basis, no lifting over 10-15 pounds, no climbing, no overhead arm extension and no squatting." T 273. Chiropractor Sportelli also stated that "this examinees excessive weight is problematic in this case. It no doubt challenges the spondylothesis that is revealed on imaging studies of his lumbar spine." T 273.

On August 4, 2008, Plaintiff treated with PA Canatta and Dr. Jones. T 290. Physical examination revealed tenderness to palpation to the right paravertebral area into the trapezius on the right and mild tenderness to the posterior aspect of the right shoulder. T 290. It was noted that an MRI completed on July 31, 2008 revealed minimal cervical disc bulges at C4-5, C5-6, and C6-7. T 290. MRI of Plaintiff's lumbar spine "reveals a Grade I spondylolisthesis of L5 on S1," and "some disc desiccation noted at this level and significant right and left foraminal stenosis noted at the L5 level. Also, T10-11, T 11-12 mild disc bulges with minimal disc desiccation." T 290. Plaintiff was diagnosed with grade I anterolisthesis L5 on S1 with foraminal stenosis at L5 and cervical spondylosis with mild disc bulges from C4 through C7. T 290. Plaintiff was prescribed Ultracet, Skelaxin, and Mobic. T 289. Plaintiff was "temporarily totally disabled at this time from his current job." T 289.

On September 15, 2008, Plaintiff treated with Amy Gemelli, RPA-C, and Dr. Jones for neck and low back pain. T 294. Plaintiff reported that most of his pain "is across the back of his neck and around the right scapula. He also has back pain with pain across the back radiating into the buttocks. He also has dysesthesias to the feet bilaterally." T 294.

Plaintiff was diagnosed as suffering from "grade I anterolisthesis L5 on S1 with foraminal stenosis at L5" and "cervical spondylosis with mild disc bulges from C4 through C7." T 294. Plaintiff was prescribed Mobic, Ultram, Topamax, and Skelaxin. T 294. It was noted that Plaintiff has a "partial marked disability. He would be appropriate for a more sedentary position." T 294.

On September 24, 2008, Chiropractor Kulawik treated Plaintiff for low back pain, and numbness in the bilateral upper and lower extremities. T 276. Plaintiff reported "constant low back pain and leg pain," and had difficulty getting out of bed and sleeping at night due to pain. T 276. Plaintiff "requires assistance getting dressed and is unable to drive to his appointments." T 276. Physical examination revealed moderately limited lumbar range of motion in all planes. T 276. Plaintiff was positive for cervical compression, Kemp's test, straight leg raise, multiple spasms, and multiple trigger points. T 276. Plaintiff was "totally disabled from light and regular duties." T 276. Plaintiff was diagnosed as suffering from lumbar sprain/strain, lumbar degenerative disc disease, cervical sprain/strain, and thoracic sprain/strain. T 276.

On October 14, 2008, Gregory Shankman, M.D., conducted an independent medical examination of Plaintiff at the request of the Workers' Compensation insurance company. T 257. Physical examination revealed reduced range-of-motion of back flexion of 30 degrees, extension to 10 degrees, side bending to 10 degrees, and rotation of 10 degrees. T 258. Plaintiff reported pain of 9/10. T 267. Dr. Shankman diagnosed Plaintiff as suffering from spondylolisthesis with degenerative disc disease of the lumbar spine, and morbid obesity. T 259. Plaintiff had a "temporary moderate partial disability." T 268. On November 12, 2008, the Workers' Compensation Board awarded Plaintiff benefits. T 125.

On November 26, 2008, Dr. Jones diagnosed Plaintiff as suffering from "L5-S1 spondylolisthesis/spinal stenosis/radiculitis/discogenic pain." T 292. Dr. Jones performed a S1 transforaminal epidural steroid injection. T 292. On January 5, 2009, Dr. Jones performed a cervical transforaminal epidural steroid injection of Plaintiff's right L1. T 288. Dr. Jones noted that Plaintiff "continues with pain with the fluoroscopic notation of T11-12 end plate spur formation/slight lateral subluxation." T 288.

On January 28, 2009, Plaintiff treated with PA Gemelli and Dr. Jones for follow-up of low back pain status post right S1 epidural injection. T 254. Plaintiff reported no change in his symptoms. T 254. Plaintiff "continues with the pain across the low back, pain in the higher lumbar region and the lower lumbar region, pain that radiates into the buttocks as well." T 254. Plaintiff had tenderness "over the L4 through S1 paravertebral area, right greater than left, L5-S1 paravertebral area, right greater than left, and at the T11-12 paravertebral area bilaterally." T 254. Plaintiff was diagnosed as suffering from T11-12 herniated nucleus pulposus and L5-S1 spondylolisthesis. T 254. Plaintiff was prescribed Ultracet, Skelaxin, Mobic, and Topamax. T 254. On January 29, 2009, Dr. Jones noted that Plaintiff suffered from a "total disability." T 253.

On February 10, 2009, Plaintiff treated with Abbie Oxford PT, DPT, with complaint of lower back pain secondary to spondylolithesis and T11-12 herniated nucleus pulposus. T 251. Plaintiff reported occasional back spasms and intermittent tingling extending down to his feet. T 251. Plaintiff also stated that he has increased lower back pain "with ambulating greater than 15 feet or prolonged standing greater than 10 minutes (unable to do dishes without a break)." T 251. Plaintiff "takes meds, uses heat and/or biofreeze to help decrease

[low back pain]. T 251. Trunk extension active range of motion was moderately limited with 7/10 lower back pain. T 251.

On March 16, 2009, Dr. Shankman again examined Plaintiff. T 264-66. Plaintiff's back range-of-motion had flexion to 40 degrees, extension to 20 degrees, side bending to 20 degrees, and rotation 20 degrees bilaterally. T 265. Dr. Shankman diagnosed Plaintiff as suffering from spondylolisthesis with degenerative disc disease, and morbid obesity. T 265. Dr. Shankman restricted Plaintiff to lifting 50 pounds or less, but cannot work overhead, cannot climb heights, cannot work in cramped or confined positions, and "he would need to sit and stand at his own volition." T 265.

On March 25, 2009, Plaintiff treated with PA Gemelli and Dr. Jones for low back pain. T 274. Direct examination revealed tenderness from L4 through the S1 paravertebral area, right greater than left. T 274. Plaintiff was diagnosed as suffering from T11-12 herniated nucleus pulposus, L5-S1 spondylolisthesis, status post right S1 and right L1 epidural injections with no change in symptoms. T 274.

On June 9, 2009, Kristen Barry, Ph.D., conducted a consultative psychiatric evaluation of Plaintiff. T 320. Dr. Barry opined that Plaintiff "is able to follow and understand simple directions and instruction. He is able to maintain his attention and concentration, and should be able to perform simple tasks independently." T 322. "He has had some difficulty adjusting and handling stressors." T 322. Dr. Barry diagnosed Plaintiff as suffering from adjustment disorder with depressed mood. T 322.

On June 9, 2009, Kalyani Ganesh, M.D., conducted a consultative internal medicine examination of Plaintiff. T 324. Physical examination revealed that Plaintiff cannot squat in full. T 325. Plaintiff's lumbar spine flexion was limited to 75 degrees, and lateral

flexion and rotation were limited to 5 degrees.  T 326.  Plaintiff had tenderness to the thoracic and lumbar spine.  T 326.  Plaintiff's deep tendon reflexes in upper and lower extremities were absent.  T 326.  Dr. Ganesh diagnosed Plaintiff as suffering from spondylolisthesis, low back, neck, and right shoulder pain, and asthma.  T 326.  Dr. Ganesh opined that Plaintiff had "mild to moderate limitation lifting, carrying, pushing, and pulling."  T 327.

On June 12, 2009, non-examining psychological consultant M. Morog opined that Plaintiff had a moderate degree of limitation in maintaining concentration, persistence, or pace.  T 343.

On July 22, 2009, Plaintiff treated with PA Gemelli and Dr. Jones for back pain.  T 365.  Plaintiff "continues to have the same pain across the back that radiates into the lumbar region into the buttocks."  T 365.  Plaintiff had tenderness at the L4-S1 paravertebral area bilaterally and limited flexion at the waist to 50 degrees.  T 365.  Plaintiff had increased pain with flexion and extension.  T 365.  Plaintiff was diagnosed as suffering from T11-12 herniated nucleus pulposis and L5-S1 spondylolisthesis.  T 365.

On September 23, 2009, Plaintiff treated with Kevin C. Lake, RPA-C, and Dr. Jones for neck, mid-back, and low back pain.  T 366.  Cervical spine examination revealed tenderness to the right upper trapezius.  T 366.  Plaintiff's mid-back was tender to the T8 through T12 midline, and lumbar spine was tender to the L5-S1 midline bilateral paravertebrals.  T 366.

On November 18, 2009, Plaintiff treated with PA Gemelli and Dr. Jones.  T 364.  Examination revealed flexion at the waist of approximately 50 degrees, extension of 10 degrees, and increased pain in the thoracic region.  T 364.  Plaintiff had tenderness over the

T11-12 region as well as the T5-6 region and bilateral L5-S1 paravertebral area.  T 364.  Plaintiff was prescribed Ryzolt and Gabapentin.  T 364.

On February 5, 2010, Plaintiff treated with PA Lake and Dr. Jones.  T 362.  Direct examination revealed tenderness to the right mid cervical paraspinals, tenderness to percussion and palpation to the mid to lower thoracic spine and upper lumbar region, and "minimal tenderness to the upper lumbar region."  T 362.  Plaintiff was diagnosed as suffering from T11-12 and T12-L1 herniated nucleus pulposis, and L5-S1 spondylolisthesis.  T 362.  Plaintiff was referred to Dr. Melfi for further epidural injections to the thoracic spine, and was prescribed Ryzolt, Ultracet, Skelaxin, and Lyrica.  T 262-63.

On February 22, 2010, Plaintiff treated with Dr. Melfi for dominant back pain, midline and right greater than left.  T 360.  Plaintiff's "[p]ain is constant and is sharp, burning, stabbing, shooting, aching, deep, tingling, numb, and electrical."  T 360.  Plaintiff also had neck and low back pain.  T 360.  Physical examination revealed accentuated kyphosis of the thoracic spine, poor posture, and "tenderness midline low thoracic spine and right lower thoracic spine."  T 361.  Dr. Melfi opined that his review of an MRI performed on December 2, 2009, showed accentuated kyphosis of the thoracic spine, mild disc bulges at T11-12 and T12-L1.  T 361.  The T 11-12 bulge "does appear to abut the anterior thecal sac."  T 361.  Plaintiff was diagnosed as suffering from degenerative disc disease of the thoracic spine.  T 361.  Dr. Melfi opined that Plaintiff had a "temporary total disability."  T 361.

On April 16, 2010, Plaintiff treated with PA Lake and Dr. Jones.  T 359.  Plaintiff had tenderness of the right mid to lower cervical paraspinals.  T 359.  Plaintiff's mid to lower thoracic and upper lumbar region were tender to percussion and palpation.  T 359.  Plaintiff's upper lumbar spine had minimal tenderness, and had limited forward flexion to 75 and

extension to 10.  T 359.  Plaintiff was diagnosed as suffering from T11-12 and T12-L1 herniated nucleus pulposus, L5-S1 spondylolisthesis, and "cervical spondylosis C4-7."  It was suspected that there was progression of a C5-6 disc protrusion versus herniation.  T 359.  Plaintiff was prescribed Lyrica and hydrocodone.  T 359.  Plaintiff had a temporary total disability from his current position.  T 359.

On April 19, 2010, Renee S. Melfi, M.D., performed a right T7-8 transforaminal epidural steroid injection on Plaintiff.  T 357.  On May 11, 2010, Dr. Melfi performed a bilateral T8-T9 transforaminal epidural steroid injection.  T 358.

On June 15, 2010, chiropractor Dr. Kulawik completed a medical source statement.  T 368.  Dr. Kulawik stated that she treated Plaintiff once a week since March 21, 2008.  T 368.  Dr. Kulawik opined that Plaintiff was "incapable of even 'low stress' jobs", and could walk one city block without rest or severe pain.  T 368.  Plaintiff could sit for 15 minutes before needing to get up, and stand for 20 minutes before needing to sit down.  T 368.  Plaintiff could rarely lift less than 10 pounds.  T 368.  Plaintiff could occasionally look down (sustained flexion of neck), turn head right or left, look up, or hold his head in a static position.  T 369.  Plaintiff could rarely twist or climb stairs, and could never stoop (bend), crouch/squat, or climb ladders.  T 369.  Plaintiff could occasionally grasp, turn, or twist objects, but could never reach with his arms.  T 369.  Plaintiff's experience of pain or other symptoms were constantly "severe enough to interfere with attention and concentration needed to perform even simple work tasks."  T 369.

On July 7, 2010, PA Lake completed a medical source statement.  T 371.  Plaintiff treated approximately every two months since June 5, 2008.  T 371.  Plaintiff's diagnoses were T 11/12 and T 12/L1 herniated nucleus pulposus, L5/S1 spondyloisthesis, cervical

spondylosis at C4-7, and a C5/6 disc protrusion.  T 371.  Plaintiff could walk one half of a city block without rest or severe pain.  T 371.  Plaintiff could sit for 15 minutes before having to stand up, and could stand for 15 minutes before having to sit down.  T 371.  Plaintiff could sit for less than 2 hours in an 8 hour working day, and could stand for less than 2 hours in an 8 hour working day.  T 371.  Plaintiff needs "a job that permits shifting positions at will from sitting, standing or walking."  T 371.  Plaintiff would sometimes need to take unscheduled breaks during an 8-hour working day approximately every 15 to 20 minutes.  T 372.  Plaintiff could occasionally lift less than 10 pounds, and rarely lift 10 pounds.  T 372.  Plaintiff could rarely look down or turn his head left or right, and never look up.  T 372.  Plaintiff could never twist, stoop (bend), crouch/squat, or climb ladders.  T 372.  Plaintiff could rarely reach with his arms.  T 372.  On average, Plaintiff was likely to be absent from work more than four days per month as a result of his impairments.  T 372.  Plaintiff's pain or other symptoms were frequently severe enough to interfere with attention and concentration needed to perform even simple tasks.  T 372.

At the hearing, Plaintiff testified that he has neck, mid back, and low back pain.  T 42.  Plaintiff testified that he could sit for 15-20 minutes before having to get up and move around, and could stand for about 15-20 minutes.  T 43.  On bad days, Plaintiff "pretty much" stays in bed.  T 44.  Plaintiff's wife puts his socks and shoes on for him.  T 43.  Plaintiff cannot walk his dog.  T 44.

After the hearing, the ALJ issued a written determination concluding that Plaintiff was not disabled within the meaning of the Social Security Act.  On Appeal, the Appeals Counsel Denied the Request for Review.  Plaintiff then commenced the instant action.

## II.   STANDARD OF REVIEW

The Court's review of the Commissioner's determination is limited to two inquiries. First, the Court must determine whether the Commissioner applied the correct legal standard. Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999). Second, the Court reviews whether the Commissioner's findings are supported by substantial evidence within the administrative record. Id. at 773. The Commissioner's finding will be deemed conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). In the context of Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938). Where the record supports disparate findings and provides adequate support for both the plaintiff's and the Commissioner's positions, a reviewing court must accept the Administrative Law Judge's factual determinations. Quinones v. Chater, 117 F.3d 29, 36 (2d Cir. 1997).

To receive federal disability benefits, an applicant must be "disabled" within the meaning of the Social Security Act. See 42 U.S.C. § 423(a),(d). A claimant must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). The impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A). Agency rules

promulgated under the Act outline a five-step analysis to determine disability.  20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows:

> (1) The Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations.  If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work; (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.

Shaw v. Carter, 221 F.3d 126, 132 (2d Cir. 2000).

In this case, the ALJ went the through the five step procedure.  At Step One, the Administrative Law Judge ("ALJ") determined that Plaintiff met the insured status requirements of the Social Security Act and had not engaged in substantial gainful activity since March 18, 2008 (the alleged onset date).  At Step Two, the ALJ determined that Plaintiff had the following severe impairments: cervical sprain/strain, lumbar sprain/strain, thoracic sprain/strain, obesity, bulging discs, grade I anterolisthesis with foraminal stenosis, asthma, spondylolishesis with degenerative disc disease of the lumbar spine, vertebral fracture, radiculitis, and discogenic pain and adjustment disorder with depressed mood.  With respect to Plaintiff's right shoulder pain and neck pain, the ALJ determined that "nothing in the record suggests that [these] condition[s] impose[] more than a minimal effect on the claimant's ability

to perform basic work activities," and, therefore, concluded that the right shoulder pain and neck pain were non-severe impairments.

At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  At Step Four, the ALJ concluded that Plaintiff had the residual functional capacity to perform light work, except that Plaintiff could only "occasionally push or pull with his left and right upper extremities, climb stairs, stoop, kneel, crouch, bend and crawl and may never climb ladders, ropes or scaffolds."  The ALJ further noted that Plaintiff

> must avoid concentrated exposure to operational control of moving machinery and unprotected heights.  The claimant must also avoid concentrated exposure to fumes, odors, dust, gases and poorly ventilated areas.  In addition, the claimant is limited to simple, routine and repetitive tasks in a work environment free of fast paced production requirements and involving only simple, work related decisions with few if any work place changes.

At Step Four, the ALJ found that Plaintiff could not perform his past work. At Step Five, the ALJ concluded that, based, in part, upon the testimony of a vocational expert, there were jobs in significant numbers in the national economy that Plaintiff was capable of performing, including small parts assembly, assembler of molded frames and optical, and cashier.

**III.    DISCUSSION**

    **a.    Whether the ALJ Failed to Develop the Record**

Plaintiff's first point of contention in this action is that the ALJ failed to request any of the objective medical test reports referenced in the record.  Plaintiff argues that:

> despite references on the record of objective medical testing, the ALJ failed to request the radiological reports from those tests. For instance, Dr. Jones referenced an MIR of Plaintiff's cervical, lumbar, and thoracic spine completed on July 31, 2008. Dr. Melfi referenced an MRI of Plaintiff's thoracic spine performed on December 2, 2009.

Plaintiff contends that the failure to obtain these reports created a gap in the record, thereby warranting remand. The Commissioner responds that it was unnecessary to obtain the reports because the results of the MRIs were thoroughly discussed in the medical records of Drs. Melfi and Jones, which records are in the administrative record.

An ALJ has an affirmative duty to develop the record. Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996). The obligation is to "develop [the claimant's] complete medical history." 20 C.F.R. § 404.1512(d). Failure to fulfill this obligation ordinarily requires remand, at least where the unconsidered evidence is significantly more favorable to the claimant than the evidence considered. See Zabala v. Astrue, 595 F.3d 404, 409 (2d Cir. 2010). There is, however, no obligation to obtain duplicative evidence. Id. For the following reasons, the Court finds that the Commissioner fulfilled that obligation with respect to the MRIs.

First, the MRIs referenced by Plaintiff are duplicative of the evidence considered by the ALJ. The ALJ considered the medical records of Drs. Jones and Melfi. Both of the MRIs referenced by Plaintiff were addressed in these medical records. Second, it is not clear whether the unconsidered evidence is significantly more favorable to the claimaint than the evidence considered. Plaintiff states only that an independent review of the MRI reports would "shed light on whether Plaintiff met Listing 1.04, disorders of the spine. " Pl. Mem. of Law at 13. Plaintiff fails to identify how the ALJ's independent review of the MRIs (rather than the reviews of those reports by Drs. Jones and/or Melfi) would "shed light" on Listing 1.04.

Plaintiff also maintains that the ALJ failed to develop the record by not obtaining a treating physician's opinion of functional limitations and not re-contacting Plaintiff's treating physicians for clarification. Specifically, Plaintiff complains that there is no function-by-function analysis of Plaintiff's impairments from a treating physician. The Commissioner responds that Drs. Melfi and Jones were asked to provide functional assessments, but did not do so and that Plaintiff's attorney stated at the hearing that he would be submitting functional assessments from the treating physicians, but failed to do so.

The ALJ has an affirmative to request a plaintiff's functional capacity from a treating physician. Bennett v. Astrue, 2009 WL 1035106, at *11 (N.D.N.Y. 2009). A failure to request an assessment of a claimant's residual functioning capacity can constitute a failure to develop the record. Tricic v. Astrue, 2010 WL 3338697, at *5 (N.D.N.Y. 2010). That being said, "the ALJ's duty is not unlimited." Dutcher v. Astrue, 2011 WL 1097860 (N.D.N.Y. 2011).

As to Dr. Melfi, the ALJ was advised by Plaintiff's attorney that he applied for a functional capacity assessment from Dr. Melfi and requested an extension of time to submit such records. The ALJ granted Plaintiff fourteen days to submit the additional information and further stated "if it takes longer than the 14 days . . . just call in and let me know and then I'll consider it." No additional records were forthcoming. These circumstances fulfilled the ALJ's obligation to develop the record. Dutcher, 2011 WL 1097860, at *5.

With respect to Dr. Jones, she was asked to submit a functional capacity assessment. Her office submitted an assessment dated July 7, 2010. The assessment was not signed by Dr. Jones, but by Kevin Lake, RPA-C. Upon reviewing the record, it appears that the ALJ did not discount this assessment because it was not signed by Dr. Jones. In

fact, the ALJ made no mention of the fact that the report was not signed by Dr. Jones. To the contrary, the ALJ treated this report as having come from Dr. Jones herself. T. at 25 ("Dr. Jones found that. . . . ."). The ALJ afforded little weight to this assessment because "[w]ithin the record, Dr. Jones does not set forth any facts, findings, reports or other bases for [her] findings nor does the record support them." Because it appears that the ALJ treated this report as having been submitted by Dr. Jones herself,[1] it cannot be said that the ALJ failed to develop the record to obtain a functional capacity assessment by Dr. Jones herself.

That being said, the ALJ found that the evidence in the record did not support Dr. Jones' opinion. "The duty of the ALJ to develop the record is 'particularly important' when obtaining information from a claimant's treating physician due to the 'treating physician provisions' in the regulations." Dickson v. Astrue, 2008 WL 4287389, at *13 (N.D.N.Y. Sept. 17, 2008). The ALJ cannot reject a treating physicians opinions without first seeking additional information from the treating physician to determine upon what information the treating source was basing his opinions. See Clawson v. Astrue, 2011 WL 40555043, at *4 (N.D.N.Y. July 27, 2011); see also 20 C.F.R. § 404.1212(e) (imposing an obligation on the ALJ to re-contact the treating physician for additional information when the report does not contain the necessary information or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques).[2] "[I]f the evidence does not support a treating

---

[1] On appeal, the Appeals Counsel found that Dr. Jones' assessment should not be evaluated under the treating physician rule because it was signed by an RPA-C, rather than Dr. Jones herself.

[2] See Lowry v. Astrue, 2012 WL 1142308, (2d Cir. Apr. 6, 2012) (noting that effective March 26, 2012, the Commissioner amended 20 C.F.R. § 416.912 to remove former paragraph (e) and the duty it imposed on ALJs to re-contact a disability claimant's treating physician under certain circumstances).

source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *6 (S.S.A. July 2, 1996).  Similarly, if a physician's finding in a report is believed to be insufficiently explained, lacking in support, or inconsistent with the physician's other reports, the ALJ must seek clarification and additional information from the treating physician to fill any clear gaps before dismissing the doctor's opinion. See Santiago v. Astrue, 2012 WL 189979, at *19 (S.D.N.Y. May 24, 2012) (ALJ erred when he failed to re-contact treating physician regarding inconsistent findings); Taylor v. Astrue, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (ALJ erred by not re-contacting treating physician after determining the physician's opinion was "not well-supported by objective medical evidence").

Dr. Jones is Plaintiff's treating physician.  It does not appear that the ALJ made any additional effort to recontact Dr. Jones for clarification of the reasons for her opinion. Accordingly, remand is warranted on this ground.

The Court declines to address the remaining issues raised on appeal because they are dependent upon the determination that Plaintiff had the residual functional capacity to perform light work and that determination may change based upon the results of the efforts to recontact Dr. Jones.

**IV.     CONCLUSION**

For the foregoing reasons, this matter is remanded for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: June 14, 2012

_Thomas J. McAvoy_
Thomas J. McAvoy
Senior, U.S. District Judge